IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Action No. |
| v. ) | 10-00244-04-CR-W-DW |
| ) | |
| MICHAEL STOKES, ) | |
| ) | |
| Defendant. ) | |

## **DETENTION ORDER**

On October 27, 2010, I held a detention hearing. I find by clear and convincing evidence that Defendant poses a danger to the community and that no single condition of release or combination of conditions of release will assure the safety of the community.

### *I. BACKGROUND*

On September 8, 2010, an indictment was returned charging Defendant with conspiracy to commit sex trafficking by force, fraud, or coercion and to use an interstate facility to promote an unlawful activity, in violation of 18 U.S.C. § 371; sex trafficking by force, fraud or coercion, in violation of 18 U.S.C. §§ 1591, 1594 and 2; and using an interstate facility to facilitate an unlawful activity, in violation of 18 U.S.C. §§ 1952(a) and 2. Defendant was arrested on September 9, 2010 in the Central District of California. Defendant appeared in the Central District of California pursuant to the Indictment and was detained as a flight risk and as a danger to the community. Defendant was then returned to the Western District of Missouri and appeared before me for his initial appearance on October 21, 2010. During the first appearance proceeding, I granted the government's motion for a detention hearing and a motion to continue the hearing and remanded Defendant to the custody of the United States Marshal.

The detention hearing was held on October 27. 2010. Defendant appeared in person, represented by appointed counsel Kelly Connor-Wilson. The government was represented by Assistant United States Attorney Cynthia Cordes. The parties stipulated that the court consider the information in the pretrial services reports of Central District of California Pretrial Services Officer Merredith Monroe and Western District of Missouri Pretrial Services Officer Timothy Hair as the testimony they would give, under oath, if called as witnesses with two clarifications. Defendant stated he has been aware of possible charges for at least twelve (rather than eighteen) months and that he was not familiar with the alleged victim when she was 16 years old.

Additional evidence was presented by both Defendant and the government. Defense counsel made a proffer that, were Defendant to testify, he would testify in accordance with the factual statements contained within Defendant's Motion to Reconsider Pretrial Detention (Doc. No. 74). I highlighted the factual statements contained within the motion and marked it as Court's Exhibit 2. With regard to paragraph 3(e), Ms. Connor-Wilson clarified that the loss of Defendant's leg was not related to war, as Defendant did not have any combat experience. With regard to paragraph 3(f), Ms. Connor-Wilson again stated Defendant was aware of potential charges at least twelve months before his arrest. Defendant would further testify that he never: (1) downloaded pictures of Co-Defendant Bagley torturing and sexually abusing FV; (2) watched Co-Defendant Bagley torture FV; (3) raped and sexually tortured FV; (4) refused to stop the abuse when FV begged him to do so; (5) provided Co-Defendant Bagley with items for sessions with FV; (6) tied FV to a machine; and (7) threatened, injured or intimidated FV. Defendant would also state that any images located on his personal computer were not downloaded by him.

The Government made a proffer that were FBI Special Agent Samuel Benson to testify, he

would testify in accordance with the factual statements contained within the Government's motion for pretrial detention (Doc. No. 16). I highlighted the factual statements contained within the motion and marked it as Court's Exhibit 1.

The following exhibits were admitted during the hearing:

| | |
|---|---|
| Government's Exhibit 1: | Photograph of Co-Defendant Bagley residence |
| Government's Exhibits 2-9: | Photographs taken from Co-Defendant Bagley's computer depicting images distributed by Co-Defendant Bagley to Defendant Stokes and abuse by Defendant Stokes to FV (UNDER SEAL) |
| Court's Exhibit 1: | Motion of the United States for Pretrial Detention |
| Court's Exhibit 2: | Motion to Reconsider Pretrial Detention |

Finally, I judicially noticed the statutory presumption against release.[1]

## II. FINDINGS OF FACT

On the basis of the information contained in the reports of the pretrial services officers and the evidence presented at the hearing, I find that:

1.  Defendant has been a resident of Lebanon, Missouri for 30 years.

2.  Defendant's mother is deceased; his father lives in Springfield, Missouri. Defendant has one brother who resides in Colorado and two sisters that reside in California. Defendant maintains limited contact with his father and brother, and some contact with his sisters.

3.  Defendant has been married for thirty years. He and his wife have a twenty-three year-old son.

4.  Defendant is disabled and retired. He was previously employed by the State of

---

[1] 18 U.S.C. § 3142(e) states in pertinent part as follows: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense . . . in violation of 18 U.S.C. § 1591 or 2421."

Missouri as a Disabled Veteran's Employment Representative for 19 years.

     5.     Defendant's service history includes the following:

          a.     Past Chapter Commander, Disabled American Veterans (DAV), National Order of Trench Rats (NOTR);
          b.     Past State Commander, DAV, NOTR;
          c.     Past National Officer, DAV, NOTR;
          d.     Past State Treasurer, Disabled Veterans of Missouri;
          e.     National Board of Directors, NOTR;
          f.     National Newsletter Editor, NOTR; and
          g.     The only living person to hold life membership in all fifty states in the Disabled Veterans of America.

Defendant also counsels new amputees at the Southwest Center for Individual Living. He received three national awards for his work with disabled veterans.

     6.     Defendant has a prosthetic left leg. He was diagnosed with depression in 2003 but did not receive counseling and was not prescribed medication.

     7.     Defendant used marijuana 33 years ago. He reported being a social drinker and denied issues with illegal substances and/or alcohol.

     8.     Defendant does not have any known criminal history.

     9.     Defendant was visiting his sisters in California when he learned about the instant Indictment and immediately surrendered to authorities in California. Defendant advised he had been aware of the instant offense investigation for approximately twelve months and that he had met with agents on a regular basis to provide information.

     10.     In 2003, Co-Defendant Bagley recruited and enticed a mentally deficient victim of foster care sexual abuse ("FV"), to live with him. Through sexual acts, the internet, and sadomasochism pornography, he groomed the victim to become a "sex slave." On FV's 18th birthday, Co-Defendant Bagley had her sign a "sex slave contract" which he told FV bound her to

him as his slave. The defendant then sexually tortured and mutilated FV for over six years. The defendant provided FV with drugs, maintained and threatened her with numerous firearms, transported her to California to have her engage in a sadomasochism photo shoot, and tortured her on live webcam Internet sessions.

11. During these live web cam sessions, Co-Defendant Bagley met Defendant Stokes. Defendant Stokes watched Defendant Bagley torture FV over live web cam sessions. Defendant Stokes downloaded pictures of Bagley torturing and sexually abusing FV as well. Defendant Stokes visited the Bagley residence on numerous occasions to rape and sexually torture FV. The torture sessions included, but were not limited to, flogging, torturing her with a sensory deprivation devices, and electrocution. FV begged Defendant Stokes to stop the abuse and Defendant Stokes not only refused, but would increase the torture to punish her for protesting.

12. Defendant Stokes provided Co-Defendant Bagley with steaks, cigarettes, coats, clothing, lighters, and cash for his "sessions" with FV. He also gave Co-Defendant Bagley $300 to build a home-made device, called a "fucking machine," which was made up of a black plastic toolbox with a motor and piston inside connected to a metal arm with a dildo attached. Defendants Stokes and Bagley would tie FV to the machine so she could be raped by the object for hours at a time.

13. Defendant, in the course of the commission of the offenses, threatened, injured, and intimidated FV.

14. In addition to the victim, numerous witnesses have provided statements against Defendant detailing his illegal conduct as charged.

15. In the course of the investigation, the government seized Defendant's computer

media which contain images of child pornography, Internet history demonstrating his access to the website where FV was broadcast being sexually victimized, and over 1700 website hits on bondage and torture webpages. An initial preview of his computer media shows that Defendant has images of at least 50 different women being sexually abused and tortured. The computer media seized indicates that Defendant is actively looking for new women who would serve as his "submissive" in sexual sessions. The computer media also contains images of child pornography and access to websites such as "utltra hot lolitas."

### III. CONCLUSION

I find by clear and convincing evidence that no single condition or combination of conditions of release will reasonably assure the safety of the community. Defendant is charged with crimes of violence. He is alleged to have raped and sexually tortured FV over an extended duration via flogging, sensory deprivation devices and electrocution. When FV begged Defendant to stop, he refused and increased the torture to punish her for protesting. Computer media seized from Defendant contains images of at least 50 different women being sexually abused and tortured. The computer media also reveals Defendant actively looked for new woman to serve as his "submissive" in sexual sessions. Defendant has a history of untreated mental health concerns. Moreover, I find that Defendant has failed to rebut the presumption provided for in 18 U.S.C. § 3142(e) that no condition or combination of conditions of release will reasonably assure the safety of the community.

It is, therefore

ORDERED that Defendant be committed to the custody of the Attorney General or his authorized representative for detention pending trial. It is further

ORDERED that Defendant be confined in a corrections facility separate, to the extent

practicable, from persons awaiting or serving sentences or being held in custody pending appeal. It is further

ORDERED that the Attorney General or his authorized representative ensure that Defendant is afforded reasonable opportunity for private consultation with his counsel. It is further

ORDERED that, on order of a court in the Western District of Missouri, the person in charge of the corrections facility where Defendant is confined deliver Defendant to a United States Marshal for his appearance in connection with a court proceeding.


                                                                                                    */s/ Robert E. Larsen*
                                                                                                   ROBERT E. LARSEN
                                                                                                   United States Magistrate Judge

Kansas City, Missouri
October 28, 2010

7

Case 4:10-cr-00244-DW   Document 77   Filed 10/28/10   Page 7 of 7