IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action No. |
| v. | ) | 10-00244-04-CR-W-DW |
| | ) | |
| MICHAEL STOKES, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING MOTION TO SEVER DEFENDANTS AND GRANTING MOTION TO SEVER COUNTS

Before the court is defendant's motion for severance of defendants on the grounds that (1) he will be unfairly prejudiced if one defendant exercises his right to testify while another invokes his Fifth Amendment right to remain silent; (2) he will be unable to call co-defendant Edward Bagley as a witness; (3) joinder of the defendants will confuse the jury and make it unreasonably difficult for them to compartmentalize the evidence; and (4) there will be a prejudicial spillover effect from the introduction of evidence on the counts with which defendant is not charged. Defendant also moves to sever counts 11 and 12 from the remaining counts because they are improperly joined. I find that defendant is properly joined with his co-defendants and that he has raised no grounds which justify severing defendants but that counts 11 and 12 are improperly joined with the remaining counts. Therefore, defendant's motion to sever defendants will be denied, and his motion to sever counts will be granted.

## I. BACKGROUND

On March 30, 2011, a superseding indictment was returned charging defendant with one count of conspiracy to commit sex trafficking by force, fraud or coercion in violation of 18 U.S.C. § 371 (count 1); one count of sex trafficking by force, fraud or coercion, in violation of 18 U.S.C. §§ 1591 and 1594 (count 2); one count of receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2) (count 11); one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (count 12); and one count of using an interstate facility to facilitate an unlawful activity, in violation of 18 U.S.C. § 1952(a) (count 13). The indictment charges four defendants with a total of 18 counts plus one count of criminal forfeiture.

On April 14, 2011, defendant filed a motion to sever his trial from the trial of other defendants (document number 164) on the grounds that (1) he will be unfairly prejudiced if one defendant exercises his right to testify while another invokes his Fifth Amendment right to remain silent; (2) he will be unable to call co-defendant Edward Bagley as a witness; (3) joinder of the defendants will confuse the jury and make it unreasonably difficult for them to compartmentalize the evidence; and (4) there will be a prejudicial spillover effect from the introduction of evidence on the counts with which defendant is not charged. Additionally defendant argues that counts 11 and 12

should be severed from the remaining counts as they are unrelated and dissimilar to the remaining counts.

On April 20, 2011, the government filed a response in opposition to defendant's motion for severance (document number 172) arguing that the defendants and the counts are all properly joined.

## II. *JOINDER OF COUNTS*

Rule 8, Federal Rules of Criminal Procedure, establishes the requirements for joinder of offenses or defendants in the same indictment. The objective of Rule 8 is to balance the prejudice inherent in joint trials against the interests in judicial economy. Whether counts are properly joined under Rule 8 is a question of law. United States v. Rodgers, 732 F.2d 625, 628 (8th Cir. 1984). The propriety of joinder must appear on the face of the indictment. United States v. Wadena, 152 F.3d 831, 848 (8th Cir. 1998), cert. denied, 526 U.S. 1050 (1999); United States v. Bledsoe, 674 F.2d 647, 655 (8th Cir.), cert. denied, 459 U.S. 1040 (1982). See also United States v. Grey Bear, 863 F.2d 572, 573-578 (8th Cir. 1988) (en banc) (statement of Lay, J.), cert. denied, 493 U.S. 1047 (1990).

Unless all defendants are charged in all counts of the indictment, joinder of offenses in multiple-defendant cases is

judged by Rule 8(b)[1] rather than 8(a).[2] <u>United States v. Southwest Bus Sales</u>, 20 F.3d 1449, 1454 (8th Cir. 1994). This is significant because the language of Rule 8(a) does not allow joinder on the same basis as 8(b); the words "same or similar character" are omitted from 8(b). The rationale for applying 8(b) rather than 8(a) in multiple defendant cases is stated in <u>United States v. Jones</u>, 880 F.2d 55, 61 (8th Cir. 1989):

> When similar but unrelated offenses are jointly charged to a single defendant, some prejudice almost necessarily results, and the same is true when several defendants are jointly charged with a single offense or related offenses. Rule 8(a) permits the first sort of prejudice and Rule 8(b) the second. But the Rules do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses.

(citing <u>Cupo v. United States</u>, 359 F.2d 990 (D.C. Cir. 1966), <u>cert</u>. <u>denied</u>, 385 U.S. 1013 (1967)). Therefore, there are definite limits to what the government can put together in a single indictment. <u>United States v. Nicely</u>, 922 F.2d 850, 853 (D.C. Cir. 1991).

---

[1] Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

[2] The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged -- whether felonies or misdemeanors or both -- are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

To be part of the "same series of acts," the offenses charged must be part of one overall scheme about which all joined defendants knew and in which they all participated." United States v. Gravatt, 280 F.3d 1189, 1191 (8th Cir. 2002); United States v. Sazenski, 833 F.2d 741, 745 (8th Cir. 1987), cert. denied, 485 U.S. 906 (1988); United States v. Bledsoe, 674 F.2d 647, 656 (8th Cir.), cert. denied, 459 U.S. 1040 (1982). Rule 8(b)'s language "may not be read to embrace similar or even identical offenses, unless those offenses are related. . . . [T]here must be a logical relationship between the acts or transactions within the series." United States v. Nicely, 922 F.2d at 853 (quoting United States v. Perry, 731 F.2d 985, 990 (D. C. Cir. 1984)). This depends upon the relatedness of the facts underlying each offense.

> "[W]hen the facts underlying each offense are so
> closely connected that proof of such facts is necessary
> to establish each offense, joinder of defendants and
> offenses is proper." United States v. Gentile, 495
> F.2d 626, 630 (5th Cir. 1974). When there is no
> "substantial identity of facts or participants between
> the two offenses, there is no 'series' of acts under
> Rule 8(b)." [United States v.] Marionneaux, 514 F.2d
> [1248,] 1249 [(5th Cir. 1975)].

United States v. Lane, 735 F.2d 799, 804 (5th Cir. 1984), rev'd on other grounds, 474 U.S. 438 (1986).[3] Generally, the test for

---

[3] The Supreme Court held that improper joinder of defendants does not, in itself, violate the Constitution; rather, misjoinder arises to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. The Court therefore held that

whether counts are misjoined under Rule 8(b) is whether the acts alleged in the indictment are unified by some substantial identity of facts or participants. <u>United States v. Butera</u>, 677 F.2d 1376 (11th Cir. 1982).

In this case, counts 11 and 12 are not alleged in the indictment to be part of the same series of acts or transactions as counts 1, 2 and 13.

Count 1 of the indictment in this case charges a conspiracy to commit sex trafficking. Count 2 (which incorporates count 1) charges sex trafficking. Count 13 (which also incorporates count 1) charges use of an interstate facility to facilitate an unlawful activity, specifically the conduct charged in counts one and two.

Defendant mistakenly cites Rule 8(a) in arguing that the counts are improperly joined. Defendant argues that:

> The applicable laws in this matter are Rules 8 and 14 of the Federal Rules of Criminal Procedure. Rule 8(a) states: "The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged -- whether felonies or misdemeanors or both -- are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."

---

the harmless error rule applies to improper joinder. However, the harmless error rule does not apply at the pretrial stage. The harmless error rule comes into use when a litigant appeals the decision of a judge or jury, arguing that an error of law was made at trial that resulted in an incorrect decision or verdict.

As related in the Facts above, the Government seeks to present two totally separate matters within one indictment against Mr. Stokes.  The charges relayed in Counts One, Two, and Thirteen have no connection to the charges outlined in Counts Eleven and Twelve.  The alleged victim of Counts One, Two, and Thirteen is not the alleged victim in Counts Eleven and Twelve.  The ages of the alleged victims are different by mere virtue of the nature of the charges:  Counts One, Two, and Thirteen involve an alleged adult female victim; Counts Eleven and Twelve allege offenses related to children.  There is no reason to charge Mr. Stokes in the same indictment and, therefore, no reason to bring him to trial on these matters within one trial.  These distinct matters should be severed into separate trials.

The government's entire argument with respect to the joinder

of counts reads as follows:

[T]he child pornography which supports Counts Eleven and Twelve is inextricably intertwined with the related evidence pertaining to Counts One, Two, and Thirteen for the commercial sex trafficking.  The defendant met Defendant E. Bagley on the internet on alt.com.  The defendant downloaded and viewed images of the victim on his hard drive being sexually abused by Defendant E. Bagley.  During these same time frames, and on the same computers, the defendant also downloaded and viewed images of other bondage pornography and images of child pornography.  The internet history for these items, along with the images themselves, are mixed in and throughout the same collection of pornography which includes images of the victim, and images of bondage and sadism.  Further, many of the images of the victim downloaded by Defendant Stokes depict the petite victim when she was just barley *[sic]* an adult at 18 years of age.  The child pornography images depict minors of the same age and build as the victim.

However, most importantly, the defendant fails to explain how he suffers any prejudice from the presentation of the child pornography evidence.  These are not a codefendant's images of child pornography, but the defendant's images of child pornography seized from the defendant's own hard drives.  Thus, the defendant's child pornography charges are also properly joined in the indictment.

The relevant counts of the indictment are set forth in Appendix A to this order.

Contrary to the government's argument, a mere parallel of facts among counts does not establish that those counts are properly joined, or even that the evidence of one count is "inextricably intertwined" with the evidence of another. In any event, the proper test for joinder is whether the counts are part of the same series of acts or transactions as opposed to similar offenses.

❑ The defendant met Defendant E. Bagley on the internet on alt.com. The defendant downloaded and viewed images of the victim on his hard drive being sexually abused by Defendant E. Bagley. During these same time frames, and on the same computers, the defendant also downloaded and viewed images of other bondage pornography and images of child pornography. The internet history for these items, along with the images themselves, are mixed in and throughout the same collection of pornography which includes images of the victim, and images of bondage and sadism.

This observation is irrelevant. Using this logic, any offense (even making a false loan application) using this computer would be properly joined. Had defendant made a false loan application from this computer during the same time frame as the sex trafficking conspiracy and kept those false documents mixed in with the pictures of FV on his computer, under the government's argument the false statement count would also be properly joined. The test is whether the acts alleged in the indictment are unified by some substantial identity of facts or participants. Clearly they are not. Proving that defendant

8

downloaded child pornography is relevant only to counts 11 and
12. There is nothing that the government will prove to establish
the elements of counts 11 and 12 that will also be used to prove
the elements of the remaining counts, other than perhaps that
defendant possessed a computer. Rule 8(b) does not permit such
joinder. I suspect that even Rule 8(a) would not permit joinder
of counts under this scenario.

❏ Further, many of the images of the victim downloaded by
Defendant Stokes depict the petite victim when she was just
[barely] an adult at 18 years of age. The child pornography
images depict minors of the same age and build as the
victim.

This argument borders on absurd. Nowhere in the law is
there any provision for someone being charged or convicted of a
child pornography offense simply because an adult victim is
petite and is "barely" an adult. The fact that the victim of one
crime is petite and an adult teenager has no bearing on whether
it is properly joined with a count charging a crime against a
minor. Furthermore, victims' similar physical appearances is not
a basis for joining otherwise unrelated counts. The same
argument could be made of a bank robbery charge if the teller
were a petite female barely 18. This simply has no bearing on
whether charges are properly joined.

The question here is whether counts 11 and 12 are part of
the same series of acts as the conduct in counts 1, 2 and 13.
They must be part of one overall scheme about which all joined

defendants knew and in which they all participated. There must be a logical relationship between the acts or transactions within the series -- some substantial identity of facts or participants.

I find that there is no substantial identity of facts or participants between counts 11 and 12 and counts 1, 2 and 13. Therefore, there is no "series" of acts as required by Rule 8(b). The face of the indictment establishes that the victims in the offenses are different. There is no indication on the face of the indictment that any of the co-defendants knew that Stokes was attempting to receive or that he possessed child pornography, and receiving or possessing child pornography was not part of the overall scheme with which all of the other defendants are charged. Although the extremely detailed account of the conspiracy as outlined in count 1 includes references to computers, those references are infrequent and use of the computer is not a major factor in the conspiracy:

> Object of the conspiracy number 4 states that Bagley advertised FV over the internet as his slave.

> Object number 5 states that Bagley communicated with co-defendants over the internet about his use of FV as a slave.

> Overt act 4 states that the Bagleys used the internet to show adult pornography to FV.

> Overt act 13 states that the Bagleys used the internet to send a text message.

> Overt act 21 states that Bagley tortured FV on live web cam over the internet.

Overt act 28 states that Bagley communicated over the internet with co-defendants.

Overt act 37 states that Bagley streamed live video over the internet and Cook watched.

Overt act 44 states that Cook gave Bagley videos he had downloaded from the internet.  The videos are not alleged to have been child pornography.

There simply is no relation between these alleged uses of a computer and defendant Stokes's alleged use of his computer to receive or possess child pornography.  Counts 11 and 12 are not alleged to be overt acts of the conspiracy charged in count one. They are not post-charge or post-investigation conduct calculated to hinder prosecution or escape liability on the original charges.  There is no overlap of evidence, and there is no indication from the face of the indictment that any of the evidence of counts 11 and 12 will be used to prove counts 1, 2 or 13.

Although the government argues that defendant is not entitled to a severance of counts because he has not established prejudice, such a showing is not required at the pretrial stage. Rule 8 governs the propriety of joinder; Rule 14 governs severance which is a remedy if the defendant can establish that he will be sufficiently prejudiced by otherwise properly joined counts.  The Supreme Court held in <u>United States v. Lane</u>, 474 U.S. 438 (1986), that the harmless error rule applies to improperly joined counts; however, the harmless error rule does

not apply at the pretrial stage.  The harmless error rule comes into play when a litigant appeals the decision of a judge or jury, arguing that an error of law was made at trial that resulted in an incorrect decision or verdict.  A trial court will not go forward, knowingly creating error, merely because the harmless error rule will be used should a defendant be convicted and appeal.  If it is determined before a trial that counts are misjoined, severance should be granted.

Based on the above, I find that counts 11 and 12 are improperly joined with counts 1, 2 and 13.  Therefore, defendant's motion to sever those two counts will be granted.

### III. *JOINDER OF DEFENDANTS*

Joint trials play a vital role in the criminal justice system.  <u>Richardson v. Marsh</u>, 481 U.S. 200, 209 (1987).  They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." <u>Id.</u>, at 210.

Whether joinder of defendants is proper is a question of law which is reviewed de novo.  <u>United States v. Robaina</u>, 39 F.3d 858, 861 (8th Cir. 1994).  Rule 8, Federal Rules of Criminal Procedure, establishes the requirements for joinder of defendants in the same indictment.  Whether defendants are properly joined under Rule 8 is a question of law.  <u>United States v. Rodgers</u>, 732 F.2d 625, 628 (8th Cir. 1984).  The propriety of joinder must

appear on the face of the indictment.  United States v. Wadena, 152 F.3d 831, 848 (8th Cir. 1998), cert. denied, 526 U.S. 1050 (1999); United States v. Bledsoe, 674 F.2d 647, 655 (8th Cir.), cert. denied, 459 U.S. 1040 (1982).  See also United States v. Grey Bear, 863 F.2d 572, 573-578 (8th Cir. 1988) (en banc) (statement of Lay, J.), cert. denied, 493 U.S. 1047 (1990).

For joinder of defendants under Rule 8(b) to be proper, there must be some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense.  United States v. Gravatt, 280 F.3d 1189, 1191 (8th Cir. 2002); United States v. Sazenski, 833 F.2d 741, 745 (8th Cir. 1987), cert. denied, 485 U.S. 906 (1988).

Where an indictment charges all of the defendants with one overall count of conspiracy, joinder of defendants is proper under Rule 8.  United States v. Lane, 474 U.S. at 447.  Furthermore, the existence of a single conspiracy "lends prima facie correctness" to joinder of the substantive counts charged as overt acts of the conspiracy.  United States v. Andrade, 788 F.2d 521, 529 n. 7 (8th Cir. 1986).

As the indictment in this case sets forth on its face a single conspiracy to commit sex trafficking by force, fraud or coercion, the defendants are properly joined for trial.

Once the Rule 8 requirements are met by the allegations in the indictment, severance thereafter is controlled entirely by Federal Rule of Criminal Procedure 14. <u>United States v. Lane</u>, 474 U.S. at 447. Rule 14 allows severance where joinder will result in unfair prejudice to a defendant.

The general rule is that persons charged in the same indictment should be tried together. <u>Zafiro v. United States</u>, 506 U.S. 534 (1993). Courts have long recognized that joint trials conserve government funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial. <u>United States v. Lane</u>, 474 U.S. at 449; <u>Bruton v. United States</u>, 391 U.S. 123, 134 (1968).

Severance under Rule 14 will not be granted absent a showing of unfair prejudice. <u>United States v. Lane</u>, 474 U.S. at 447. Severance is not required simply because a defendant might have a better chance of acquittal in a severed proceeding. <u>United States v. Blaylock</u>, 421 F.3d 758, 766 (8th Cir. 2005); <u>cert</u>. <u>denied</u>, 546 U.S. 1126 (2006); <u>United States v. Vue</u>, 13 F.3d 1206, 1210 (8th Cir. 1994); <u>United States v. Oakie</u>, 12 F.3d 1436, 1441 (8th Cir. 1993). Furthermore, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. <u>Zafiro v. United States</u>, 506 U.S. at 539. Where defendants are properly joined under Rule 8(b), severance should

be granted only if there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. Accord United States v. Joiner, 418 F.3d 863, 868 (8th Cir. 2005); United States v. Horne, 4 F.3d 579, 590 (8th Cir. 1993), cert. denied, 510 U.S. 1138 (1994). Even when the risk of prejudice is high, limiting instructions often will suffice to cure any risk of prejudice. Zafiro v. United States, 506 U.S. at 539; Richardson v. Marsh, 481 U.S. at 211.

Joint trial of jointly indicted defendants is particularly appropriate when co-defendants are charged with conspiracy. United States v. Dijan, 37 F.3d 398, 402 (8th Cir. 1994), cert. denied, 514 U.S. 1043 (1995); United States v. Wint, 974 F.2d 961 (8th Cir. 1992), cert. denied, 506 U.S. 1062 (1993). Joint trial in those cases is favored especially when proof against the defendants is based upon the same evidence or acts. United States v. Agofsky, 20 F.3d 866, 871 (8th Cir.), cert. denied, 513 U.S. 909 (1994); United States v. Rodgers, 18 F.3d 1425, 1431 (8th Cir. 1994). This will almost always be the case since all of the evidence presented against co-defendants will also be admissible against the moving defendant pursuant to Pinkerton v. United States, 328 U.S. 640 (1946), which held that a member of a conspiracy may be held responsible for a co-conspirator's acts and statements in furtherance of the conspiracy.

*Bruton*.  Defendant first argues that severance is required because "statements that will be attributed to Co-defendant Edward Bagley may contain information about Mr. Stokes.  Mr. Stokes' right to call Defendant Edward Bagley as a witness to contradict those statements or cross-examine him will be impaired; Defendant Edward Bagley retains a privilege against self-incrimination."

In <u>Bruton v. United States</u>, 391 U.S. 123 (1968), the Supreme Court held that the admission in a joint trial of a nontestifying co-defendant's confession expressly implicating the defendant violated the defendant's right under the Sixth Amendment to confront the witnesses against him, even if the trial court instructed the jury to consider the confession only against the co-defendant who had made the statement.  In a more recent case, however, the Court held that the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when the confession is redacted to eliminate not only the defendant's name, but any reference to his existence.  <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987).

In its response, the government states that Edward Bagley made a statement which mentions defendant Stokes by name one time.  In the rest of his statement, Edward Bagley refers to defendant Stokes

only . . . when he talks about groups of men in general, never explicitly stating his name. . . . Defendant E. Bagley's statement already serves as a redacted statement. Defendant E. Bagley refers to Defendant Stokes in a grouping fashion, "these people" and "the others." . . . If the replacement of the defendant's name in <u>Garcia</u> with the term "someone" did not violate <u>Bruton</u>, then the replacement of Defendant Stokes'[s] name in Defendant E. Bagley's statement with the terms like the "person," "someone," or "another person" likewise will not violate <u>Bruton</u>.

Defendant does not identify the statement at issue; he simply points out that a statement "may" contain information about him.  Because the government has indicated that the statement includes defendant's name only one time, defendant's motion to sever on this basis will be denied at this time. However, the government will be ordered to provide a copy of any statement by a defendant which it intends to introduce at trial that implicates defendant Stokes by name.

*Inability of defendant to call co-defendant Edward Bagley as a witness*.  Defendant argues that he should be severed because he will be unable to call Edward Bagley as a witness.  Before such a claim will mandate severance, it must first be shown that the co-defendant in question is actually willing to testify at a severed trial, and that the co-defendant's testimony will actually be substantially exculpatory.  <u>United States v. Vue</u>, 13 F.3d 1206, 1210 (8th Cir. 1994).  The Eighth Circuit has traditionally required a detailed showing of the particulars of the proffered testimony before requiring severance.  <u>United States v. Jackson</u>, 549 F.2d 517, 524-25 (8th Cir.), <u>cert</u>. <u>denied</u>, 430 U.S. 985

(1977).  Defendant has neither indicated that Edward Bagley would be willing to testify nor that any expected testimony would be substantially exculpatory.  Therefore, his motion for severance on this basis will be denied.

*Jury's ability to compartmentalize the evidence*.  Defendant argues that he is entitled to a severance because the jury will be confused and will be unable "to attribute individual actions and charges as to one defendant or the other."

Although a joint trial may make it more difficult for a defendant to defend himself, difficulty alone is not a reason to reject joinder.  A showing of clear prejudice must be made.  United States v. Agofsky, 20 F.3d 866, 871 (8th Cir.), cert. denied, 513 U.S. 909 (1994).  Whether or not prejudice occurs depends primarily on whether the jury could compartmentalize the evidence against each defendant.  Id.  This is a question directed to the discretion of the trial judge and can normally be resolved through applicable jury instructions.  United States v. Nevils, 897 F.2d 300, 305 (8th Cir.), cert. denied, 498 U.S. 844 (1990).

Eighth Circuit Model Criminal Jury Instruction 5.06I allows the jury to consider acts done and statements made by co-conspirators during and in furtherance of the conspiracy "as evidence pertaining to the defendant even though they were done or made in the absence of and without the knowledge of the

18

defendant" if the jury finds that a conspiracy exists.  In addition, the trial court, before submitting the case to the jury, must find by a preponderance of the evidence that a conspiracy exists.  United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978).  Therefore, if the trial court and the jury find that a conspiracy exists, all of the evidence introduced against co-defendants will also be admissible against defendant on the conspiracy charge.

Eighth Circuit Model Criminal Jury Instruction 3.08 instructs the jury to give separate consideration to the evidence about each individual defendant.  "Each defendant is entitled to be treated separately, and you must return a separate verdict for each defendant.  Also keep in mind that you must consider, separately, each crime charged against each individual defendant, and must return a separate verdict for each of those crimes charged."  Therefore, if the jury does not find beyond a reasonable doubt that a conspiracy exists, the jurors are instructed to consider the evidence on the substantive counts only as to those defendants charged in those counts.

Finally, Eighth Circuit Model Criminal Jury Instruction 2.14 instructs the jury to consider evidence only in the case against a particular defendant.  This instruction may be read to the jury immediately before or after the introduction of evidence which is admissible only against a particular defendant.

Defendant offers no support for his argument that the jury will not be able to compartmentalize the evidence other than the general statement that each of the defendants' alleged actions and omissions differ from those of the others. This is not persuasive. Considering the cautionary instructions available and the counts as charged in the indictment, I do not believe the evidence will be so complex or muddled as to prevent the jury from separately considering the evidence against defendant Michael Stokes. Almost all of the evidence admissible to prove the substantive counts with which Stokes is not charged will be admissible to prove the conspiracy with which he is charged. The only charges which are not overt acts of the conspiracy are counts 10, 14, 15, 16, 17 and 18.

Count 10 charges Edward Bagley with being an illegal drug user in possession of a firearm. However, the overt acts in furtherance of the conspiracy include the fact that Bagley used illegal drugs with FV and the fact that Bagley kept firearms in order to coerce FV to comply with his demands. Therefore, no additional evidence will be admitted because of this count. The remaining five counts are against co-defendant Bradley Cook and involve his alleged attempt to tamper with witnesses by having the victim and another witness killed. The evidence to prove those counts will no doubt be the subject of a limiting instruction which will adequately instruct the jury to consider

that evidence only as to Bradley Cook and not as to defendant Stokes.

Because almost all of the evidence to prove the counts with which defendant is not charged would be admissible against him in a separate trial as well, and because any possible prejudice in this case can be resolved through applicable jury instructions, defendant's motion for severance on the ground that the jury will be unable to compartmentalize the evidence will be denied.

*Spillover effect*. Finally defendant argues that he will be unduly prejudiced by the evidence of counts 3, 4, 5, 6, 7, 8, 9, 10, 14, 15, 16, 17, and 18 because he is not charged in those counts.

A defendant is not entitled to severance simply because the evidence against a co-defendant may be more weighty or damaging than the evidence against him. <u>United States v. Roach</u>, 28 F.3d 729, 738 (8th Cir. 1994); <u>United States v. Rimell</u>, 21 F.3d 281, 289 (8th Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 976 (1994). It is not enough to show that evidence admissible against a co-defendant will not be admissible against the moving defendant. <u>United States v. Sparks</u>, 949 F.2d 1023, 1027 (8th Cir. 1991), <u>cert</u>. <u>denied</u>, 504 U.S. 927 (1992); <u>United States v. Reeves</u>, 674 F.2d 739, 746 (8th Cir. 1982). Moreover, disparity in the evidence against each of the defendants or allegations that evidence incriminating a co-defendant will have a spillover prejudicial

effect against the moving defendant are, alone, insufficient grounds for severance. United States v. O'Meara, 895 F.2d 1216, 1919 (8th Cir.), cert. denied, 498 U.S. 943 (1990). Thus, preference for joint trial of jointly indicted defendants is not limited by any requirement that the quantum of evidence of each defendant's culpability be quantitatively or qualitatively equivalent. United States v. Swinney, 970 F.2d 494 (8th Cir.), cert. denied, 506 U.S. 1011 (1992); United States v. Pecina, 956 F.2d 186 (8th Cir. 1992); United States v. Pou, 953 F.2d 363, 368-69 (8th Cir), cert. denied, 504 U.S. 926 (1992); United States v. Stephenson, 924 F.2d 753, 761 (8th Cir.), cert. denied, 502 U.S. 813 (1991).

In this case, defendant is charged with conspiracy to commit sex trafficking, (count 1), sex trafficking (count 2), and using a computer to facilitate an unlawful activity (count 13). As discussed above, all of the other substantive counts (with the exception of the last five against Bradley Cook) are also charged as overt acts of the conspiracy. Therefore, almost all of the evidence presented against co-defendants will also be admissible against defendant pursuant to Pinkerton v. United States, 328 U.S. 640 (1946) (a member of a conspiracy may be held responsible for a co-conspirator's acts and statements in furtherance of the conspiracy). Limiting instructions will cure any unreasonable prejudice from the admission of evidence of Cook's alleged

attempt to have the victim and another witness murdered. Therefore, defendant's motion for severance on the ground that there may be a prejudicial spillover effect will be denied.

## IV. CONCLUSION

Based on all of the above, I find that (1) all of the defendants are properly joined, (2) defendant has raised no issues which would justify a severance of defendants, and (3) counts 11 and 12 are improperly joined with the remaining counts. Therefore, it is

ORDERED that defendant's motion to sever defendants is denied. It is further

ORDERED that defendant's motion to sever counts 11 and 12 is granted. It is further

ORDERED that the government provide the court with copies of all statements by co-defendants implicating defendant Stokes which the government intends to use at trial. Those statements shall be provided to the court no later than June 24, 2011. It is further

ORDERED that counsel for the government and counsel for co-defendant Stokes submit to me a proposed trial setting for the two severed counts by May 16, 2011.

Counsel are reminded that objections to this order on the ground that it is clearly erroneous or contrary to law must be filed and served within ten days.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
April 22, 2011

APPENDIX A

The counts against defendant Stokes read as follows:

**COUNT ONE**

A.   Introduction

At all times relevant to this Indictment:
1.   Defendants EDWARD BAGLEY,[4] MICHAEL STOKES, and
MARILYN BAGLEY, and Dennis Henry and James Noel were
residents of the Western District of Missouri.   Defendant
BRADLEY COOK, was a resident of the Eastern District of
Missouri.
2.   Unless otherwise specified herein, Defendants
EDWARD BAGLEY, BRADLEY COOK, MICHAEL STOKES, and MARILYN
BAGLEY, and Dennis Henry and James Noel engaged in the
alleged conduct herein in the Western District of Missouri.
3.   A female born in February 1986, was the victim of
the crimes alleged herein.   Female Victim, hereafter "FV,"
was a resident of the Western District of Missouri.

B.   Object of the Conspiracy

Between on or about December 2002, to and including
February 27, 2009, within the Western District of Missouri,
and elsewhere, Defendants EDWARD BAGLEY, BRADLEY COOK,
MICHAEL STOKES, and MARILYN BAGLEY, and Dennis Henry and
James Noel, and others known and unknown to the Grand Jury,
conspired and agreed with each other to:
(a)   recruit, entice, harbor, transport, provide, and
obtain FV and benefitted financially and by receiving
something of value from participation in a venture which
engaged in an act of recruiting, enticing, harboring,
transporting, providing, and obtaining FV, knowing that
force, fraud, and coercion, and any combination of such
means, would be used to cause FV to engage in a commercial
sex act; and did so in and affecting interstate commerce;
all in violation of Title 18, United State Code, Sections
1591(a) and (b)(1);
(b)   use a facility of interstate commerce to promote,
establish, carry on, and facilitate the promotion,
establishment, and carrying on, of unlawful activity; all in

_____

[4]The alleged nicknames have been omitted for ease of
reading.

i

violation of Title 18, United States Code, Section
1952(a)(3).

C.    Manner and Means By Which the Object of the Conspiracy
      was to be Accomplished

      The object of the conspiracy was to be accomplished, in
substance, as follows:
      1.    Defendants EDWARD BAGLEY and MARILYN BAGLEY
recruited and enticed a minor female, FV, who[m] they
believed suffered from mental deficiencies and came from a
troubled childhood, into their trailer home in a wooded area
within the Western District of Missouri.
      2.    Defendants EDWARD BAGLEY and MARILYN BAGLEY
engaged in sexual intercourse and sexual torture activities
with FV to groom and coerce her to become a "sex slave."
      3.    Defendant EDWARD BAGLEY beat, whipped, flogged,
suffocated, choked, electrocuted, caned, skewered, drowned,
mutilated, hung, and caged FV to groom and coerce her to
become a "sex slave."
      4.    Defendant EDWARD BAGLEY advertised and publicized
FV over the internet and in live web cam sessions as his
slave who would engage in sexual acts and could be tortured
during live online sessions, or in person.
      5.    Defendants BRADLEY COOK and MICHAEL STOKES, and
Dennis Henry and James Noel communicated with Defendant
EDWARD BAGLEY on the internet and the telephone regarding
BAGLEY's use of FV and the sexual acts he could have her
perform for them as his slave.
      6.    Defendants BRADLEY COOK, MICHAEL STOKES and Dennis
Henry and James Noel provided Defendant EDWARD BAGLEY with
benefits and things of value including, but not limited to,
cash, cigarettes, computer hard drives, sadomasochism
videos, coats, and meat.
      7.    Defendant EDWARD BAGLEY accepted the benefits and
things of value and coerced FV to engage in sexual acts and
torture sessions with Defendants BRADLEY COOK, MICHAEL
STOKES, and Dennis Henry and James Noel.
      8.    Defendants BRADLEY COOK and MICHAEL STOKES, and
Dennis Henry and James Noel engaged in sexual acts with FV,
including sexual torture, including, but not limited to,
flogging, whipping, shocking, choking, piercing, skewering,
sewing, stapling, and electrocuting.

D.    Overt Acts

      In furtherance of the conspiracy and to accomplish the
object of the conspiracy, Defendants EDWARD BAGLEY, BRADLEY

COOK, MICHAEL STOKES, MARILYN BAGLEY, and Dennis Henry and James Noel, and others known and unknown to the Grand Jury, committed various overt acts within the Western District of Missouri and elsewhere, including, but not limited to the following:

1.    In or about December 2002, Defendants EDWARD BAGLEY and MARILYN BAGLEY invited FV, a 16-year-old minor, who grew up in foster care homes, into their residence after she ran away from home and promised her "a great life," including but not limited to, making her a model and a dancer, and making her "dreams come true."

2.    In or about February 2003, Defendants EDWARD BAGLEY and MARILYN BAGLEY gave FV her own bedroom, dresser, and television, and provided her with clothes and food to entice her to stay in their trailer home.

3.    Between on or about December 2002, to and including December 6, 2004, Defendant MARILYN BAGLEY modeled "slave clothes" as a part of recruiting FV to become Defendant EDWARD BAGLEY's slave.

4.    Between on or about December 2002, to and including February 27, 2009, Defendants EDWARD BAGLEY and MARILYN BAGLEY used the internet and adult BDSM pornography to train and groom FV to become a sex slave.

5.    Between on or about December 2002, to and including February 2004, Defendant EDWARD BAGLEY had sexual intercourse with FV while she was still a minor.

6.    Between on or about December 2002, to and including February 2004, Defendants EDWARD BAGLEY and MARILYN BAGLEY showed FV, while she was still a minor, images of pornography and sadomasochism activities on the internet, his computer, and television.

7.    On or about February 10, 2004, Defendant EDWARD BAGLEY had FV sign a "sex slavery contract" and related home-made documents, shortly after her 18th birthday and instructed FV that the contract legally bound her to him as his "sex slave," with a term that "never" ended.

8.    Between on or about February 10, 2004, to and including December 27, 2005, Defendant EDWARD BAGLEY sewed FV's urinary opening and vagina shut to show her what was "expected of her."

9.    Between on or about February 10, 2004, to and including February 2005, Defendant EDWARD BAGLEY had FV tattooed to mark her as his property, which included a tattoo of:

      (1)  a bar code on FV's neck; (2) a tribal tattoo on her back with the letter "S" to mark her as a slave; and (3) the Chinese symbol for slave on her ankle.

10.  Between on or about December 2002, to and including February 27, 2009, Defendant EDWARD BAGLEY gave FV marijuana and ecstasy, Schedule I controlled substances.

11.  Between on or about February 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY engaged in oral, vaginal, and anal sex with FV.

12.  On or before August 19, 2004, Defendant MARILYN BAGLEY posed in photographs taken by Defendant EDWARD BAGLEY where she sexually tortured FV, including, but not limited to, full vaginal penetration with her fist.

13.  On or before June 6, 2005, Defendants EDWARD BAGLEY and MARILYN BAGLEY sent a text message on the internet stating he "whored out" FV.

14.  On or about December 9, 2006, FV called Defendant MARILYN BAGLEY from California and told Marilyn Bagley that she was afraid of Ed Bagley using the crank phone on her for the photo shoot.  Defendant MARILYN BAGLEY indicated to FV she did not have a choice and not to upset Defendant EDWARD BAGLEY.

15.  Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY performed the following sexual acts, mutilation, and torture, any one of which constitute an overt act, including, but not limited to, the following:

a.  Defendant EDWARD BAGLEY sewed FV's vaginal opening with a needle and thread.

b.  Defendant EDWARD BAGLEY skewered through FV's flesh on her pubic region, pierced FV's vaginal opening and tacked open her labia.

c.  Defendant EDWARD BAGLEY punctured through FV's nipples with multiple metal needles.

d.  Defendant EDWARD BAGLEY hooded, roped down, and pierced through FV's nipples with hooks and stretched her breasts into the air.

e.  Defendant EDWARD BAGLEY whipped FV's body, breasts, genitalia, and anus with paddles, canes, and floggers.

f.  Defendant EDWARD BAGLEY tied up FV's breasts, cutting off blood flow and circulation to escalate sensitivity, and slapped her breasts with metal devices.

g.  Defendant EDWARD BAGLEY tied up FV's breasts, cutting off blood flow and circulation to escalate sensitivity, and pierced her breasts with needles.

h.  Defendant EDWARD BAGLEY tied FV down, duct taped her mouth, and cut through her breast with a long metal skewer.

i. Defendant EDWARD BAGLEY gagged FV and tied her body and neck up with rope, cutting off oxygen.

j. Defendant EDWARD BAGLEY tied FV's limbs behind her body and left her hanging, suspended in the air, or on a bench for long period's *[sic]* of time.

k. Defendant EDWARD BAGLEY gagged FV, tied her limbs stretched open, and suctioned her breasts and vaginal labia with suction devices.

l. Defendant EDWARD BAGLEY chained FV's body down or to the wall and blindfolded and hooded her.

m. Defendant EDWARD BAGLEY gagged and blindfolded FV naked, chained up FV, and stretched her limbs in opposing directions.

n. Defendant EDWARD BAGLEY gagged FV, tied her hands behind her back, and nailed FV's nipples to slabs of wood.

o. Defendant EDWARD BAGLEY bound and tied FV naked to a wooden pony or wooden horse with an appendage inserted into her vaginal or anal opening.

p. Defendant EDWARD BAGLEY strapped FV down for hours at a time on a home-made device consisting of a plastic toolbox with a motor and piston inside connected to a metal arm with a dildo attached.

q. Defendant EDWARD BAGLEY locked, chained and hooded FV naked in a dog cage, often suspending the cage in the air or attaching FV's sex organs to electrical devices while she was trapped in the cage.

r. Defendant EDWARD BAGLEY electrocuted FV with crank phones by generating high levels of electric voltage into FV through her toes, labia, nipples, vagina, and anus.

s. Defendant EDWARD BAGLEY inserted a catheter into FV's urethra and clamped the cord to prevent urination for extended periods of time.

t. Defendant EDWARD BAGLEY inserted a plug into FV's anus which he used to electrocute her and force water into her rectum.

u. Defendant EDWARD BAGLEY performed "waterboarding" on FV by forcing her head underwater or pouring water on her face for extended periods of time.

v. Defendant EDWARD BAGLEY suffocated FV to unconsciousness with ropes and plastic bags.

16. Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY escalated, increased, and extended the torture outlined in Paragraphs 15(a) - (v) above, that he executed upon FV as a form of punishment if FV attempted to stop the activity,

cried for help, or did not otherwise cooperate during the course of the torture.

17. Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY refused FV necessary medical care and provided FV animal antibiotics for infections and illness.

18. Between on or about January 2004, to and including June 2007, Defendant MARILYN BAGLEY warned FV to "do as she was told" or should would see "Violent Ed."

19. Between on or about February 10, 2004, to and including February 27, 2009, Defendant MARILYN BAGLEY refused to offer FV assistance when FV expressed fear of Defendant EDWARD BAGLEY.

20. Between on or about February 2003, to and including February 27, 2009, Defendants EDWARD BAGLEY and MARILYN BAGLEY took and held FV's government identification documents, including, but not limited to, FV's birth certificate and social security card.

21. Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY tortured FV on live web cam over the internet.

22. Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY threatened and exhibited his ability to kill FV by maintaining numerous guns in the home.

23. Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY threatened and exhibited his ability to kill FV by shooting animals she cared for in front of her, and bragging about the bodies he had already buried in the woods behind the trailer home.

24. On or about February 8, 2009, Defendant EDWARD BAGLEY, while intoxicated, transported FV from a strip club with a loaded firearm in his vehicle.

25. Between on or about October 2008, to and including February 27, 2009, Defendant EDWARD BAGLEY threatened to bury FV alive and showed her a video demonstrating how he intended to do it.

26. Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY ignored FV's pleas to stop abusing her, would not allow her to use a "safe word," or ignored her "safe word" when she attempted to use it during the sex/torture sessions that he performed with her alone, and those witnessed in and participated in by Defendants MICHAEL STOKES and BRADLEY COOK and Dennis Henry and James Noel.

27. Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY

performed "abortions" on FV using specula, vacuums, and clothing hangers for the purpose of terminating possible pregnancies.

28. Between on or about February 10, 2004, to and including February 27, 2009, Defendants MICHAEL STOKES and BRADLEY COOK and Dennis Henry and James Noel communicated with Defendant EDWARD BAGLEY on the internet and/or the telephone regarding sexual and torture activities involving FV.

29. In or about 2004, Defendant EDWARD BAGLEY invited Dennis Henry to his trailer residence and presented FV to Dennis Henry as his slave.

30. Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY provided FV to Dennis Henry to allow Dennis Henry to torture her, including but not limited to, allowing him to tie FV up, strap her to a wooden pony, and whip her with floggers and leather straps.

31. Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY, after torturing FV, would have her clean up the mess and clean the sexual toys and devices used on her because that was "her responsibility" as a slave.

32. Between on or about February 10, 2004, to and including February 27, 2009, Defendant EDWARD BAGLEY provided FV to Dennis Henry to have him engage in oral and vaginal sex with her.

33. Between on or about March 2007, to and including February 27, 2009, Defendant EDWARD BAGLEY provided FV to Dennis Henry for him to have anal sex with FV so he could "get her used to" having anal sex with other men.

34. In or about December 2006, Defendant EDWARD BAGLEY and Dennis Henry transported FV from Missouri to California with the intent that FV perform sexual acts during a photo shoot.

35. In or about December 2006, Defendant EDWARD BAGLEY accepted approximately $1,400 from Dennis Henry for FV to engage in sex acts during a pornographic photo shoot in California.

36. In or about March 2007, Defendant EDWARD BAGLEY accepted an additional $500 from Defendant Dennis Henry for further transportation of FV from Missouri to California.

37. Between on or about, February 10, 2004, to and including October 2008, Defendant BRADLEY COOK watched Defendant EDWARD BAGLEY stream live video over the internet of FV being sexually abused and tortured, including, but not limited to, being whipped through the bars of a cage.

38.   Between on or about February 10, 2004, to and
including February 27, 2009, Defendant BRADLEY COOK
downloaded pictures of FV distributed by Defendant EDWARD
BAGLEY to his computer and saved them.

39.   Between on or about February 10, 2004, to and
including February 27, 2009, Defendant BRADLEY COOK sent
images to Defendant EDWARD BAGLEY of females in his
residence that he beat, bound and tied up to share ideas
with Defendant BAGLEY of how to abuse FV.

40.   Between on or about January 2006, to and
including, October 2008, Defendant BRADLEY COOK visited
Defendant EDWARD BAGLEY's residence and smoked marijuana
with Defendant EDWARD BAGLEY and FV.

41.   Between on or about January 2006, to and
including, October 2008, Defendant BRADLEY COOK traveled to
Defendant EDWARD BAGLEY's residence and observed Defendant
BAGLEY have FV perform sexual acts for Defendant COOK.

42.   Between on or about January 2006, to and
including, October 2008, Defendant BRADLEY COOK traveled to
Defendant EDWARD BAGLEY's residence and had FV perform oral
sex on him.

43.   Between on or about January 2006, to and including
October 2008, Defendant BRADLEY COOK engaged in vaginal,
anal, and oral sex with FV.

44.   Between on or about January 2006, to and including
October 2008, Defendant BRADLEY COOK gave Defendant EDWARD
BAGLEY a hard drive with sadomasochism and torture videos
downloaded from the internet, including videos showing how
to bury someone alive.

45.   Between on or about January 2006, to and including
October 2008, Defendant EDWARD BAGLEY whipped FV for
Defendant BRADLEY COOK while FV was chained up.

46.   Between on or about January 2006, to and including
October 2008, Defendant BRADLEY COOK, sexually abused
females in his own residence and shared those torture
methods with Defendant EDWARD BAGLEY for him to apply to FV.
Any one of which constitutes an overt act, including, but
not limited to the following:

        a.   tied up FV's breasts with rope, cutting off
        her blood flow, and then slapped the sensitized area
        with a paddle or his hand;

        b.   tied up FV and then applied wooden spring
        clothes pins to her body;

        c.   tied up FV and placed a ball gag and rings in
        her mouth;

        d.   tied up FV naked, laying *[sic]* down, and
        poured water on her face to "waterboard" her.

47.   Between on or about February 10, 2004, to and

including February 27, 2009, Defendant MICHAEL STOKES
traveled to Defendant EDWARD BAGLEY's residence and engaged
in the following acts, any one of which constitutes an overt
act, including, but not limited to the following:

        a.    flogged and whipped FV's body;

        b.    shocked FV's vaginal opening with an
electrical device;

        c.    tortured FV with a sensory deprivation
device;

        d.    watched Defendant EDWARD BAGLEY torture FV
with a crank phone;

        e.    watched Defendant EDWARD BAGLEY electrocute
FV while she was confined in a dog cage.

48.  Between on or about June 2006, to and including
February 27, 2008, Defendant MICHAEL STOKES engaged in oral
and vaginal sex with FV.

49.  On or about 2006, Defendant MICHAEL STOKES offered
FV to James Noel and another known person to the Grand Jury
for sex acts and transported James Noel to Defendant EDWARD
BAGLEY's residence.

50.  In or about December 2006, Defendant MICHAEL
STOKES gave Defendant EDWARD BAGLEY $1,000 to transport FV
to California for a pornographic photo shoot where FV would
engage in sex acts.

51.  Between on or about February 10, 2004, to and
including February 27, 2009, Defendant MICHAEL STOKES gave
Defendant EDWARD BAGLEY steaks, cigarettes, coats, clothing,
lighters, and cash.

52.  In or about March 2005, Defendant MICHAEL STOKES
gave Defendant EDWARD BAGLEY $300 to build a home-made
device to torture FV, which was made up of a black plastic
toolbox with a motor and piston inside connected to a metal
arm with a dildo attached.

53.  Between on or about 2006, to and including
February 27, 2009, Defendant EDWARD BAGLEY hooked FV to an
electrical device that was connected to a dildo for
Defendant MICHAEL STOKES and James Noel's *[sic]* to watch.

54.  Between on or about 2006, to and including
February 27, 2009, Defendant EDWARD BAGLEY tortured FV for
James Noel with a crank phone, electrical devices, a violet
wand and floggers.

55.  Between on or about December 2006, to and
including March 2007, Defendant EDWARD BAGLEY accepted $300
from James Noel to watch and engage in torture activities
with FV for several hours.

56.  Between on or about February 10, 2004, to and
including February 27, 2009, Defendant MARILYN BAGLEY
accepted and utilized the benefits received from FV's sexual

acts and dancing at the local adult entertainment clubs for herself, including, but not limited to, cigarettes, steaks, clothes, food, and cash.

57. Between on or about June 2007, to and including February 27, 2009, Defendant EDWARD BAGLEY had FV work at an adult entertainment club as a dancer and stripper for his own financial benefit.

58. On or about February 27, 2009, Defendant EDWARD BAGLEY suffocated and electrocuted FV during a torture session, which resulted in her cardiac arrest, emergency medical treatment, and hospitalization.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs A through D of Count One of this indictment.

Between on or about February 10, 2004, continuing through on or about February 27, 2009, in the Western District of Missouri and elsewhere, EDWARD BAGLEY, BRADLEY COOK, MICHAEL STOKES, and MARILYN BAGLEY, defendants herein, aiding and abetting one another and others, knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, and obtained by any means, a person, namely FV, and benefitted financially and by receiving something of value from participation in a venture engaged in recruiting, enticing, harboring, transporting, providing, and obtaining FV, knowing that force, fraud, and coercion would be used to cause FV to engage in a commercial sex act; and attempted to do so.

All in violation of Title 18, United States Code, Sections 1591(a), 1594, and 2.

## COUNT ELEVEN

Between on or about December 13, 2004, continuing through on or about August 12, 2010, in the Western District of Missouri and elsewhere, MICHAEL STOKES, defendant herein, knowingly attempted to receive visual depictions in interstate commerce by means of computer and the Internet, and the production of the visual depictions involved the use of minors engaged in sexually explicit conduct, and the visual depictions were of such conduct.

All in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(2).

## COUNT TWELVE

Between on or about December 13, 2004, continuing through on or about August 12, 2010, in the Western District of Missouri and elsewhere, MICHAEL STOKES, defendant herein, knowingly possessed images which were transported using a facility of interstate and foreign commerce and the production of the said visual depictions involved the use of a minor engaged in sexually explicit conduct and the visual depictions were of such conduct.

All in violation of 18 U.S.C. Section 2252(a)(4)(B).

## COUNT THIRTEEN

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs A through D of Count One of this indictment.

Between on or about February 10, 2004, continuing through on or about June 2007, in the Western District of Missouri and elsewhere, EDWARD BAGLEY, MARILYN BAGLEY, BRADLEY COOK, and MICHAEL STOKES, defendants herein, aiding and abetting one another and others, knowingly used a facility of interstate commerce with the intent to commit a crime of violence to further unlawful activity and otherwise promote, establish, carry on, and facilitate the promotion, establishment and carrying on, of unlawful activity, to wit: prostitution in violation of Mo. St. 567.020, Conspiracy to Commit Sex Trafficking in violation of 18 U.S.C. § 371, as alleged in Count One of this indictment, and Sex Trafficking in violation of 18 U.S.C. § 1591, as alleged in Count Two of this Indictment; and attempted to do so.

All in violation of Title 18, United States Code, Sections 1952(a) and 2.